# ALASKA REPORTS

## VOLUME 5

### In re GUERTIN'S CHILD.*

(District Court. Sitka. 1887.)

No. ——.

1. PARENT AND CHILD ⬥3(1)—EDUCATION OF CHILD.
   The father of a child is chargeable with the duties of main-
   tenance and education; these cannot be performed without the
   authority to command and enforce obedience.

2. PARENT AND CHILD ⬥3(1)—SCHOOLS—RELIGIOUS INSTRUCTION.
   The term "education" is not limited to the ordinary instruc-
   tion of the child in the pursuit of literature; it means more.
   It comprehends a proper attention to the moral and religious
   sentiments of the child; in the discharge of this duty it is the
   undoubted right of the father to designate such teachers, either
   in morals, religion, or literature, as he shall deem best calcu-
   lated to impart correct instructions to the child.

DAWSON, District Judge. In an early Pennsylvania case
it was held that the authority of the father results from his
duties; he is charged with the duties of maintenance and edu-
cation. These cannot be performed without the authority to
command and enforce obedience. The term "education" is not
limited to the ordinary instruction of the child in the pursuit
of literature; it means more. It comprehends a proper atten-
tion to the moral and religious sentiments of the child. In the
discharge of this duty it is the undoubted right of the father to
designate such teachers, either in morals, religion, or literature,
as he shall deem best calculated to impart correct instruction to

---

⬥See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

* Alaskan Reports, Haydon, 1888, vol. 1, p. 29.

5 A.R.—1

the child.   No teacher, either in religion, or in any other branch of education, has any authority over the child, except what he derives from its parent or guardian.   If the parent should reach the conclusion that the attendance of his child upon the ministration of any particular religious instructor is not conducive to its welfare, he may prohibit such attendance, and confine it to such religious teachers as he may deem most likely to give it proper instruction, and to secure its welfare here and its eternal happiness in the world to come.   He cannot force it to adopt opinions contrary to the dictates of its own conscience.   He may not compel it, against its own convictions of right, to become a member of any ·religious denomination; but after it has been initiated with its own free will into the religious communion to which its parent belongs, he may lawfully restrain it during its legal infancy from placing itself under the religious control of a minister or priest whose opinions do not meet its parent's approbation.   The authority of the parent over the youth and inexperience of his offspring rests on foundations far more sacred than the institution of man.

I have now alluded to this delicate question from a legal standpoint, but it may not be amiss to view it morally.   "Honor thy father and thy mother" was the great law proclaimed by the King of Kings.   It was the first commandment, accompanied with a promise of blessing upon those who obeyed it; while the dread penalty of death was inflicted upon all who were guilty of its infraction.   "The eye that mocketh at his father and despiseth to obey his mother, the ravens of the valley shall pick it out and the young eagles shall eat it."   Prov. xxx, 17.

Many allusions might be made to the Sacred Book, but a few may suffice to show how this question stands morally.   The house of Eli was destroyed because his sons made themselves vile, and he restrained them not.   "My son, keep the instruction of thy father, and forsake not the law of thy mother."   Prov. i, 8, and vi, 20.   "A wise son heareth his father's instruction." Prov. xiii, 1.   It was justly remarked by a professor of moral philosophy, "Train up a child in the way he should go," which implies both the right and duty of the parent to train it up in the right way.   That is in the way the parent may believe to be right.

The right of the father or any one standing in loco parentis, to command, and the duty of the child to obey, is thus shown

upon the authority of the Old Testament to have been established by God himself. And the teachings of the New Testament abundantly prove that, instead of being abrogated in any respect, the duty of filial obedience was inculcated with all the solemn sanctions which the new dispensation could impose. The fifth commandment, "To honor thy father and thy mother," was repeated and enjoined by St. Paul in his Epistle to the Colossians; "Children, obey your parents in the Lord; for this is right." See upon this subject, Ephesians, vi, 1; Colossians, iii, 20.

If anything can give additional weight to the authority on which rests the doctrine of filial obedience, it is the practical example of the Savior, himself. In his quality of God it was incumbent upon him to be about the business of his Heavenly Father at Jerusalem. But in his quality of man he left the temple and all its teachings of wisdom, and in obedience to the command of his earthly parents went down with them to Nazareth and was subject unto them. See Luke, ii, 51.

It is the duty of parents to educate their children in such a manner as they (the parents) believe will be most for their future happiness, both temporal and eternal. The courts of both England and the United States have held and sustained the right of the parent to cause his children to be instructed in those religious sentiments which the parent believes to be in accordance with the will of God, and with this right no one can lawfully interfere, whether he be priest or clergy. The views herein expressed are subordinate to the rights and duties of a court of competent jurisdiction to interfere in cases of gross abuse or neglect of the child by parent or guardian.